UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JOHNNA LESHAE ADAMS,<br><br>    Defendant. | )<br>)<br>)   No. 6:11-CR-40-GFVT-HAI-3<br>)<br>)   RECOMMENDED DISPOSITION<br>)<br>)<br>)<br>)<br>)<br>) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court, on referral (D.E. 157), considers reported violations of supervised release conditions by Defendant Johnna Leshae Adams. District Judge Van Tatenhove entered a judgment against Defendant on March 9, 2012, for conspiracy to manufacture 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 846, all in violation of 21 U.S.C. § 841(a)(1). D.E. 99. Defendant was sentenced to 41 months of imprisonment and a five-year term of supervised release to follow. *Id.* at 2–3. Defendant's term of supervised release began on April 7, 2014.

On June 17, 2014, the United States Probation Office ("USPO") issued a noncompliance summary ("the Summary") stating that, on May 30, 2014, Defendant submitted a urine test which tested positively for oxycodone, a Schedule II controlled substance. D.E. 143 at 1. Defendant admitted taking oxycodone, but assured Officer Kincer that it was an isolated incident. *Id.* Officer Kincer recommended that no action be taken, in part because Defendant, on her own initiative, signed up for intensive outpatient substance abuse counseling. *Id.* Judge Van Tatenhove approved Officer Kincer's recommendation. *Id.* at 2.

On June 19, 2014, the USPO issued a Supervised Release Violation report ("the First Report") charging Defendant with two violations, and then secured a warrant from District Judge Van Tatenhove on June 25, 2014. D.E. 145. First, per the First Report, Defendant violated Standard Condition No. 7, which proscribes controlled substance use, when her urine tested positively for the presence of Oxycodone on June 18, 2014, and Defendant admitted to recent use of Oxycodone. This is a Grade C violation. Second, in relation to this positive drug test and admission, the First Report charged Defendant with failure to refrain from committing another federal, state, or local crime. Noting the Sixth Circuit's decision that use of a controlled substance includes possession and Defendant's criminal history, Violation Two charged Defendant with conduct that would be a federal crime, that is, possession of Oxycodone. Such conduct would be a Class E Felony pursuant to 21 U.S.C. § 844(a), Simple Possession of a Controlled Substance. This is a Grade B violation.

The Court conducted an initial appearance pursuant to Rule 32.1 on July 15, 2014, and set a final hearing following Defendant's knowing, voluntary, and intelligent waiver of her right to a preliminary hearing. D.E. 147. At that time, the United States made an oral motion for interim detention, to which Defendant did not object. *Id.* Based on the heavy burden on Defendant under 18 U.S.C § 3143(a), the Court found that detention was required. *Id.*

At the final hearing on July 31, 2014, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 150. Defendant competently entered a knowing, voluntary, and intelligent stipulation to both violations. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for both violations as described in the First Report. In the Supervised Release context, the Sixth Circuit treats controlled substance use as equivalent to possession.

2

*See United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000). The United States thus established both violations under the standard of 18 U.S.C. § 3583(e).

The Court continued the final hearing to allow Defendant to complete a demanding inpatient substance abuse treatment program (Liberty Place), which requires a minimum of six months participation. *Id*. The Court imposed bond conditions[1] requiring that Defendant: (1) follow directions of the USPO, (2) follow all rules and instructions of Liberty Place, and (3) report immediately to Liberty Place upon release. *Id*. The Court set Defendant's final revocation hearing for February 13, 2015. D.E. 152.

On January 5, 2015, the USPO issued a second Supervised Release Violation report ("the Second Report") charging Defendant with three new violations, and then secured a warrant from the Court on the same date. D.E. 156-1. The Second Report charged Defendant with three new violations. First, per the Second Report, Defendant violated Standard Condition No. 2 which requires Defendant to answer truthfully all inquiries by the probation officer and to follow the directions of the probation officer. The Second Report indicates that Defendant was instructed on July 31, 2014 (after her final hearing was continued), by probation to report to Liberty Place immediately, complete the long term substance abuse treatment program, and follow all program rules. On January 2, 2015, per the Second Report, Officer Kincer was contacted by staff at Liberty Place advising that Defendant had left the facility against advice of staff members. Defendant returned to Liberty Place in the early morning hours of January 3, 2015, and was drug tested. According to staff, Defendant tested positively for benzodiazepines and oxycodone, and later admitted to taking four Xanax bars and two Percocet "30s." Additionally, the Second

---

[1] The bond conditions were imposed pursuant to Rule 32.1(a)(6). Because the final revocation hearing was continued and Judge Van Tatenhove's Judgment was still in effect, Defendant also remained subject to all the conditions of supervised release therein.

Report indicates that Officer Kincer was informed by staff at Liberty Place that Defendant was transported to the hospital for a high fever on January 4, 2015, but she did not return to Liberty Place. This is a Grade C violation.

Second, the Second Report charges Defendant with a violation of Standard Condition No. 7, which proscribes controlled substance use, based upon the positive test for use of benzodiazepines and oxycodone following her return to Liberty Place, and her admission to Liberty Place staff that she had taken Xanax and Percocet. This is a Grade C violation. Third, in relation to this positive drug test and admission, the Second Report charges Defendant with failure to refrain from committing another federal, state, or local crime. Again noting the Sixth Circuit's decision that use of a controlled substance includes possession and Defendant's criminal history, Violation Three charges Defendant with conduct that would be a federal crime, that is, possession of benzodiazepines and oxycodone. Such conduct would be a Class E Felony pursuant to 21 U.S.C. § 844(a), Simple Possession of a Controlled Substance. This is a Grade B violation.

The Court conducted an initial appearance on the Second Report pursuant to Rule 32.1 on January 6, 2015, and set a final hearing following Defendant's knowing, voluntary, and intelligent waiver of her right to a preliminary hearing. D.E. 158. At that time, the United States made an oral motion for interim detention, and Defendant argued for release. *Id.* Based on the heavy burden on Defendant under 18 U.S.C § 3143(a), the Court found that detention was required. *Id.*

At the final hearing on January 13, 2015, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 161. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all three violations charged in the Second Report. *Id.*

For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for all three violations. In the Supervised Release context, the Sixth Circuit treats controlled substance use as equivalent to possession. *See United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000). The United States therefore established all three violations in the Second Report under the standard of 18 U.S.C. § 3583(e).

Thus, Defendant admitted to all five supervised release violations, and the Court proceeded with allocution. The Court has evaluated the entire record, both Supervised Release Violation Reports, and accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all of the § 3553 factors imported into the § 3583(e) analysis. Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pled guilty to conspiracy to manufacture 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 846, all in violation of 21 U.S.C. § 841(a)(1), which is a Class B felony. *See* 21 U.S.C. § 841; 18 U.S.C. § 3559. For a Class B felony, the maximum revocation sentence provided under § 3583 is three years of imprisonment. 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438–39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). Under § 7B1.1, Defendant's

admitted conduct would qualify as Grade C violations with respect to Violation One on the First Report and Violations One and Two in the Second Report, and Grade B violations with respect to Violation Two on the First Report and Violation Three on the Second Report.  Given Defendant's criminal history category of I (the category at the time of the conviction) and Grade B violations, *see* U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."), Defendant's range, under the Revocation Table of Chapter 7, is four to ten months.

Each party offered its own recommendation to the Court regarding an appropriate sentence.  The United States urged the Court to revoke and impose a sentence of sixteen months imprisonment followed by a thirty-six month period of supervised release.  The United States argued that this upward departure was necessary because of the substantial breach of the Court's trust that Defendant's conduct represented.  The United States pointed out that the Court placed a significant amount of trust in Defendant to complete the program at Liberty Place, and Defendant's failure to do so indicated that the Court does not have her attention.  Moreover, the United States asserted that this recommended sentence would serve to ensure public safety and serve as a deterrent to future crimes.

The Defendant recommended a sentence at or below the low end of the Guidelines Range. In making this recommendation, counsel argued that Defendant has a severe drug addiction that she is trying desperately to fix.  Counsel stated that Defendant was born into a family life filled with drug addiction and physical and verbal abuse.  Counsel argued that a lighter sentence was necessary to "stay the course" of helping Defendant on her road to recovery,

but would also sufficiently punish Defendant for her breach of the Court's trust. A lighter sentence, according to counsel, would set Defendant up for future success.

At the outset, the Court notes that Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant because she possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The Sixth Circuit clearly and repeatedly has equated drug use with possession, and Defendant's admitted use in this context undoubtedly results in application of § 3583(g)(1). *See United States v. Metcalfe*, 292 F. App'x 447, 450 n.2 (6th Cir. 2008) ("Mandatory revocation was . . . warranted under § 3583(g)(1), as we have held that the use of a controlled substance constitutes possession under that subsection.")

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. The Court has also carefully weighed the nature and circumstances of the offense and Defendant's particular history and characteristics. The nature and circumstances of Defendant's underlying conviction are very serious. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2001) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). A methamphetamine trafficking conspiracy, such as the one Defendant was a part of, involves inherent and attendant dangers to any community. While Defendant did not return to drug trafficking upon release, she returned to using drugs which represents a danger not only to herself, but to the public at large.

Defendant's history and characteristics indicate a very severe drug problem. This drug use has placed a significant strain on her relationships, caused her to disobey the instructions of her probation officer, and resulted in criminal conduct while on release. Substance abuse

treatment is needed but, as her inability to complete the Liberty Place program illustrates, it has not been successful in the past so as to eliminate the need for a significant prison term. During her term of supervised release following imprisonment, intensive drug treatment will need to be provided but success is contingent upon Defendant's determination. If Defendant can become and remain clean, she can become a productive member of society. However, if she cannot do this, as her past has shown, she will remain dangerous to herself, to those around her, and to the public, and likely will serve significant imprisonment terms again.

The Court reminds Defendant that the Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator.") The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into § 3583(e).

Defendant has breached the Court's trust in a significant and particularly worrisome manner. She has a severe addiction, and her actions in returning to drugs are troubling to the Court. By taking no action after violations in June 2014, District Judge Van Tatenhove placed trust in Defendant to get her addiction under control, which trust she then breached shortly thereafter. At the July 31, 2014 hearing, the Court, based upon representations made by the Defendant, again placed a significant amount of trust in her by allowing her to attend the Liberty Place program and receive treatment for her addiction. Officer Kincer has informed the Court that the Liberty Place program is outstanding, and to the Defendant's credit, she made substantial progress including completing forty-seven lessons, attending 220 classes, completing ten stages,

and attending nearly one-hundred AA meetings. However, Defendant breached the Court's trust again by leaving the program and returning to drugs. Defendant acknowledged at the final hearing that she has a severe problem and a desire to continue treatment. While commendable, Defendant's repeated breaches of the Court's trust warrant a significant prison term.

Ultimately, the Court recommends revocation and a term of imprisonment of twelve months. Because such a sentence deviates from the Guidelines Range, the Court '"must adequately explain the chosen sentence—including an explanation of *any deviation* from the Guidelines range."' *United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). The Court is also required to '"consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance."' *Id.* (quoting *Gall*, 552 U.S. at 50). Finally, the Court must state '"the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]"' *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

The Court has carefully weighed the nature and circumstances of the offense, the need for education, training, and treatment, and the need to deter criminal conduct as well as protect the public. For the reasons described above, the Court finds that twelve months imprisonment is sufficient, but not greater than necessary, to meet the statutory goals imported into the 18 U.S.C. § 3583(e) analysis. Specifically, based on Defendant's repeated breaches of the Court's trust after extraordinary efforts to provide her with treatment, the Court finds a two-month upward departure from the Guidelines Range warranted in this case.

A court also may reimpose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b), (h). The post-revocation cap depends on the "term of supervised release

authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). The general supervision-term limits of § 3583(b) apply "[e]xcept as otherwise provided." *See id.* § 3583(b). Defendant's conviction under 21 U.S.C. § 846, with penalties described in 21 U.S.C. § 841, carried no maximum term of supervised release. Under section 3583(h), there is no maximum here either. 18 U.S.C. § 3583(h). The Court finds that Defendant needs a significant amount of supervision following imprisonment to further address her addiction. Accordingly, the Court recommends that a term of forty-eight months of supervised release is necessary, with immediate placement in an inpatient substance abuse program upon her release to avoid the risk of intermittent drug use.

Based on the foregoing, the Court **RECOMMENDS** revocation, a term of imprisonment of twelve months, and forty-eight months of supervised release to follow under the conditions originally imposed by Judge Van Tatenhove with the added condition that Defendant be placed immediately in long-term impatient drug treatment upon release from prison.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court

and Court of Appeals.  *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 20th day of January, 2015.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge